## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CASEY M.,                                )
                                         )
      Plaintiff,                    )
                                         )
v.                                       )
                                         )    Case No. 21-cv-00559-SH
KILOLO KIJAKAZI, Acting                  )
Commissioner of Social Security,         )
                                         )
      Defendant.                    )

### OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Casey M. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For the reasons explained below, the Court affirms the Commissioner's decision denying benefits.

## I.     Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals).  The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[1] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[2].

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation for Title XVI.)

[2] *See generally* 20 C.F.R. § 416.960 for Title XVI.

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II and Title XVI benefits, with a protective filing date of January 9, 2020.  (R. 44, 261-72.)  Plaintiff alleges that he has been unable to work since May 31, 2018, due to degenerative disc disease, pinched nerves in his neck and back, a "blown" disc in his neck, Raynaud's disease, and rheumatoid arthritis.  (R. 261, 269, 312.)  Plaintiff was 37 years old on the date of the ALJ's decision.  (R. 60, 261.)  He has an 11th grade education and past relevant work as a cutter operator and nurse aide.  (R. 80-81, 313.)

Plaintiff's claims for benefits were denied initially and on reconsideration, and he requested a hearing.  (R. 90-153, 187-88.)   ALJ Christopher Hunt conducted an administrative hearing and issued a decision on June 3, 2021, finding Plaintiff not disabled.  (R. 44-60, 67-85.)  The Appeals Council denied review on November 2, 2021 (R. 1-6), rendering the Commissioner's decision final.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff appeals.

### III.   The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 31, 2018.  (R. 46.)  At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, depression, anxiety, posttraumatic stress disorder, and attention deficit/hyperactivity disorder.  (*Id.*)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 47-49.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of light work,[3] with certain mental limitations,[4] and the following physical limitations:

> [H]e is limited to lifting no more than 20 pounds occasionally, 10 pounds frequently, can sit 6 hours in an 8-hour workday, stand and/or walk 4 hours in an 8-hour workday, occasionally climb ramps, stairs, stoop, kneel, crouch, crawl, with no climbing of ladders, ropes, scaffolding or unprotected heights . . . . Additionally, no reaching or working overhead.

(R. 49.)  The ALJ provided a summary of the evidence that went into this finding.  (R. 49-58.)

At step four, the ALJ concluded that Plaintiff could not return to his past relevant work.  (R. 58-59.)  At step five, however, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including small product assembler I, merchandise marker, and routing clerk.  (R. 59-60.)  The ALJ thus found Plaintiff was not disabled.  (R. 60.)

---

[3] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] Plaintiff's mental impairments and resulting limitations are not at issue in this appeal.

## IV.    Issues

Plaintiff asserts the ALJ erred by: (i) failing to properly evaluate the consistency of his subjective symptoms (ECF No. 16 at 6-13); and (ii) failing to support his RFC determination with substantial evidence.  (*Id.* at 13-15.)

## V.    Analysis

### A.    Substantial Evidence Supports the ALJ's Consistency Analysis

#### 1.    The Consistency Analysis Standards

The ALJ is required to consider Plaintiff's subjective complaints, or symptoms, in determining the RFC.   20 C.F.R. § 404.1529(a), (d)(4);[5] *see also id.* § 404.1502(i) (defining "symptoms" as the claimant's "own description of [his] physical or mental impairment").[6]  When evaluating a claimant's symptoms, the Commissioner uses at two-step process.[7]   Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also generally* 20 C.F.R. § 404.1529 (regulations governing the evaluation of symptoms).   First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged.   SSR 16-3p at *3.   Second, once such impairments are established, the ALJ must then

---

[5] *See generally* 20 C.F.R. § 416.929 for Title XVI.

[6] *See generally* 20 C.F.R. § 416.902 for Title XVI.

[7] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna.   Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished); *see also* 10th Cir. R. 32.1(A) (unpublished decisions are not precedential but may be cited for persuasive value).  The term "credibility," however, is no longer used.  SSR 16-3p, at *2.

evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

### 2. The ALJ's Analysis of Plaintiff's Symptoms

The ALJ summarized Plaintiff's administrative hearing testimony in his written decision. (R. 50-51.) As relevant to this appeal, the ALJ specifically acknowledged Plaintiff's testimony that he sits in a recliner most of the time; lies down 2-3 hours per day; experiences pain when turning his head, looking up, and looking down; is in constant pain; and uses a cane and walker. (*Id.*) The ALJ noted Plaintiff reported difficulty getting

out of bed 3-4 days per week with his medication, but also stated his medications help if he takes them before he is in extreme pain.  (R. 51.)  The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record, specifically, Plaintiff's conservative treatment until his April 2021 lumbar surgery, Plaintiff's improvement after surgery, and the examination findings of record.  (R. 51, 56-57.)  As support for this conclusion, the ALJ pointed to several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (i) Dr. Tristan Smith's January 2019 physical examination finding Plaintiff had a normal posture and gait, and full strength in his feet, knees, hands, elbows, and shoulders (R. 53); (ii) Dr. Meredith Woodward's May 2020 physical examination finding Plaintiff had normal standard neck movements and normal movement of all his extremities with tenderness (R. 54); (iii) May 2021 x-rays of Plaintiff's lumbar spine showing good position of the hardware interbody grafting at L4-5 (R. 56); (iv) Plaintiff's reports of neck pain (but not back pain) at his appointments with Dr. Clinton Baird following his April 2021 lumbar surgery (R. 57); (v) the "relative" effectiveness of Plaintiff's pain medications (*id.*); and (vi) the lack of any medical source opinions indicating Plaintiff was disabled or had limitations greater than those included in the RFC (*id.*).  The ALJ went on to state,

> The undersigned has considered the claimant's testimony and finds it to be partially supported, based on the evidence of record, but the claimant's description of the severity of the pain has been so extreme as to appear implausible and is not documented to such a degree within the evidence of record.  Additionally, the undersigned finds the claimant reported extremely limited physical abilities during testimony, but they are simply not supported to the degree alleged as even his treating surgeon and treating pain management physician have not given him any limitations.

(R. 57.)

7

### 3.    Plaintiff's Arguments

Plaintiff asserts the ALJ's consistency analysis was deficient because the reasons the ALJ gave for finding Plaintiff's symptoms not as severe as he alleged were not, themselves, consistent with and supported by the evidence.  (ECF. No. 16 at 7-12.) Plaintiff specifically claims the following findings are at odds with the evidence of record: (i) the ALJ's characterization of his treatment as conservative (*id.* at 8-9), (ii) the ALJ's finding that Plaintiff's symptoms improved with lumbar surgery and medication (*id.* at 9-10), and (iii) the ALJ's determination that the findings on examination did not entirely support Plaintiff's subjective allegations (*id.* at 10-11).

The Court finds no error in the ALJ's consistency analysis.  As set forth above, the ALJ provided numerous reasons for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged, and a review of the record confirms these reasons are supported by substantial evidence.   The ALJ's thorough analysis reflects that he considered the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 50-51); precipitating and aggravating factors (R. 50-52); the type and effectiveness of medications (R. 53-54, 56-57); and his treatment aside from medication (R. 56).  *See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p at *7-8.  Accordingly, the ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, as well as SSR 16-3p and the regulations.

In essence, Plaintiff asserts that evidence exists in the record to support his subjective reports of pain and other functional limitations, pointing to his history of lumbar surgeries, scheduled cervical surgery, May 2021 lumbar x-rays, Dr. Baird's post-operative treatment notes, various physical examination findings, pre-operative imaging

of his lumbar and cervical spines, and his daily activities (*Id.* at 8-13).  However, the ALJ considered all the evidence Plaintiff points to.[8]  As discussed more fully below, the ALJ identified degenerative disc disease as a severe impairment at step two (R. 46), discussed Plaintiff's testimony, and summarized the findings of his treating, consultative, and reviewing physicians as part of the RFC analysis (R. 50-57).  This is sufficient consideration of the evidence Plaintiff identifies as supporting his allegations.  *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").  Because Plaintiff points to no evidence the ALJ overlooked, his arguments amount to a request that the Court reweigh the evidence, which it cannot do.  *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

## B.   Substantial Evidence Supports the ALJ's RFC Assessment

### 1.   Standards for Evaluating RFC

As noted above, in order to proceed to steps four and five, the ALJ determines a claimant's RFC.  That is, a claimant may have impairment(s) and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant

---

[8] Throughout his brief, Plaintiff repeatedly cites to *Kellams v. Berryhill,* 696 F. App'x 909 (10th Cir. 2017) (unpublished), as support for his arguments relating to the ALJ's evaluation of his symptoms.  However, unlike *Kellams,* the evidence the ALJ relied on to discount Plaintiff's symptoms in this case was supported by the record and consistent with his findings, and the ALJ did not overlook any evidence.  *Id.* at 914-15.  Thus, *Kellams* is distinguishable from the instant case.

can do in a work setting.  20 C.F.R. § 404.1545(a)(1).[9]  The claimant's RFC is what's left—
"the most [the claimant] can still do despite [his] limitations."  *Id.*  The Commissioner
makes this decision based on "all the relevant medical and other evidence" in the case
record.  *Id.* § 404.1520(a)(3).

In assessing the RFC, the ALJ must include "a narrative discussion describing how
the evidence supports each conclusion, citing specific medical facts . . . and nonmedical
evidence" and must "explain how any material inconsistencies or ambiguities in the
evidence . . . were considered and resolved."  SSR 96-8p, 1996 WL 374184, at *7 (July 2,
1996).  Categories of evidence include (1) objective medical evidence, (2) medical
opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and
(5) certain prior administrative medical findings.  20 C.F.R. § 404.1513(a).[10]
Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain
why the opinion was not adopted."  SSR 96-8p, at *7.

### 2.    The ALJ's RFC Assessment

In arriving at Plaintiff's RFC, the ALJ discussed Plaintiff's testimony and the
findings of his treating, consultative, and reviewing physicians.  (R. 46, 50-57.)  As part of
his discussion of the opinion evidence, the ALJ evaluated the state agency physicians'
opinions that Plaintiff could perform the full range of light work and found them partially
persuasive, because the totality of the evidence supported greater limitations.  (R. 57.)
The ALJ then found that Dr. Hardin's consultative examination findings supported the
RFC, and he explained Dr. Hardin did not offer any functional limitations for him to
consider.  (R. 58.)  The ALJ also correctly noted the record does not contain an opinion

---

[9] *See generally* 20 C.F.R. § 416.945 for Title XVI.

[10] *See generally* 20 C.F.R. § 416.913 for Title XVI.

from any physician or provider indicating Plaintiff has limitations beyond those included in the RFC. (R. 57.) Specifically noting Plaintiff's April 2021 lumbar surgery and recommended cervical surgery, the ALJ further explained he limited Plaintiff to less than the full range of light work with the ability to sit six hours in an eight-hour day and stand/walk more than four hours in an eight-hour day, because "residuals from surgery are likely." (R. 58.) The ALJ concluded his RFC analysis by stating the following:

> The undersigned finds that even though the claimant does have severe physical . . . impairments, . . . they are not severe enough to prevent the claimant from performing substantial gainful activity, given the residual functional capacity set forth above. Therefore, given the objective medical evidence in the record, the undersigned finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing severe exacerbation of his symptoms.

(*Id.*)

### 3. Plaintiff's Arguments

Plaintiff asserts the ALJ's RFC assessment is not supported by substantial evidence, because: (1) his conclusions about the evidence were unsupported, (2) the ALJ failed to "provide a sufficient narrative connecting the evidence to the specific limitations in the RFC," and (3) the state agency physicians' opinions were outdated. (ECF No. 16 at 13-14.)

The Court finds no error in the ALJ's RFC assessment. As explained above, the ALJ's conclusions regarding the evidence are supported by substantial evidence. Plaintiff simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185. Moreover, even if the evidence could support a different

finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.*

The ALJ also adequately explained the link between the evidence and the RFC, specifically accounting for the residuals of not only Plaintiff's April 2021 lumbar surgery, but also his pending neck surgery.  (R. 58.)  Additionally, the ALJ fully considered the normal and abnormal range of motion and strength findings, Plaintiff's pain and tenderness on examination, and all of the imaging of record and concluded that the RFC adequately accounted for the functional limitations resulting from his degenerative disc disease.  (R. 51-58.)  Notably, the longitudinal evidence in the record does not reflect further limitations; there is no medical source opinion in the record that identifies limitations greater than those included in the RFC assessment; and the ALJ clearly considered the evidence of record in his decision.  The Court thus finds the ALJ considered all the evidence related to Plaintiff's degenerative disc disease and sufficiently explained how such evidence supported the RFC assessment.  *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.").  Nothing more was required.  The Court again declines Plaintiff's invitation to reweigh the evidence and finds the ALJ's RFC assessment is both reasonable and supported by substantial evidence.

Likewise, Plaintiff's argument that the state agency physicians' opinions were outdated is unpersuasive.  As set forth above, the ALJ rejected the state agency physicians' opinions that Plaintiff could perform the full range of light work.  Instead, based on the record as a whole and the residuals from Plaintiff's back surgery and impending neck surgery, the ALJ found Plaintiff could perform less than the full range of light work, reduced the number of hours Plaintiff could stand/walk in an eight-hour day to four, and

increased the number of hours he could sit in an eight-hour day to six.  (R. 49, 58.) Because the ALJ considered all the evidence of record, including the evidence dated after the state agency physicians issued their opinions, and assessed an RFC that was more restrictive than the state agency physicians identified, any error the ALJ may have made when considering their opinions is harmless.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (a finding of harmless error is appropriate where the court can confidently say no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way).

In sum, the ALJ's decision reflects that he examined and analyzed Plaintiff's subjective symptoms, the objective medical evidence, and the opinion evidence of record. It was only after evaluating the entire record and explaining his findings, that the ALJ formulated Plaintiff's RFC.  Plaintiff's arguments essentially ask the Court to reweigh the evidence and interpret it in his favor, which the Court cannot do.  Accordingly, the ALJ applied the correct legal standards, and his RFC assessment is supported by substantial evidence.

## VI.   Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 10th day of March, 2023.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT